Good morning, Your Honors. Thank you very much. Edward M. Bialak, along with Harold Horowitz, four petitioners, the Thomas family. With the Court's permission, we would like, I would like to speak for no more than ten minutes and hopefully address myself to the first issue having to do with the question of family as a particular social group. Mr. Horowitz will then speak for ten minutes on the second issue. We realize you can't always segregate them that easily, and we would like to reserve ten minutes for a reply afterwards. I'm not going to repeat, obviously, what's in the briefs. The Court is fully up on what's in there. Almost twenty years ago, the Acosta decision by the BIA set forth the parameters for a determination of what a particular social group is. Congress, in enacting the asylum by a particular social group, the BIA formulated what has proven to be a fairly workable concept, which is the immutable characteristics concept of a particular social group. This Court, the Ninth Circuit, was one of the leaders in attempting its own formulation. There was a, Sanchez-Trahil, of course, formulated it along the lines of a voluntary association, but consistently throughout the years, panels in this circuit and other circuits began to apply the Acosta characteristics to determining whether a family may qualify as a particular social group. Mr. Wiley, what about Estrada Posadas? Is that still good law? Well, Judge Kleinfeld, it's good law, but I think it's distinguishable. As I put in my brief, or we put in our brief, we thought that perhaps it was a little over-emphasizing the fact that there may not have been a specific case recognizing a family as a particular social group. This is Judge O'Scannon. Oh, I'm sorry, Your Honor. I read it wrong. Judge O'Scannon, I'm sorry. I do believe that the case is distinguishable, because in that case, there was a kind of a nebulous, hard-to-define concept of a family. Family social group. There was some credibility problems the petitioner had, and the court simply didn't find that the petitioner in that case had been persecuted. And that's why, when you look at all the cases that have discussed family as a social group, invariably, they focus initially on the immediate family, the nuclear family. Now, what makes it interesting is the government's argument that somehow, in our case, the family is too small of a unit to have a social group standing. That's inherently at odds with the cases that have focused first on the immediate nuclear family as a particular social group. In this particular case, for example, we have four members of the family. Let me just go back to Estrada Posadas for a second. I'm troubled by this language. You indicate that you agree it still is good law. But when we say in that opinion that she cites no case that extends the concept of persecution of a social group to the persecution of a family, and we hold it does not, if Congress had intended to grant refugee status on account of family membership, it would have said so. That's pretty clear language, is it not? It is clear language, Your Honor, and to the extent that it says that no case has extended the concept of social group to a family, I would submit respectfully that it's in error, at least subsequent to that case. There have been a number of cases that have done so. Now, asking or saying that Congress, had it intended to extend that protection, would have done so, I think Congress, and one can guess because the legislative history in this case is simply not clear as to what they meant. But had Congress intended to restrict the particular social group standing or exclude families, it could have done so, too. I mean, it's been almost 20 years since the BIA and since this circuit and many other circuits now, I think there are five circuits that agree that a family is entitled to social group standing. Let me ask you about those other circuits. The Eleventh Circuit in particular has been quite clear, and I think some others have, that a family can be a social group for purposes of the asylum statute, but it has to be a nationwide persecution of the family. There's textual support in the definition in the statute at 8 U.S.C. 11-01-42, unable or unwilling to return to that country because of persecution on account of membership in a particular social group. There can be such a family. I happen to be friends with a grandniece or granddaughter of Haile Selassie. When they had the Marxist Revolution, it was dangerous to be part of Haile Selassie's family in Ethiopia. But that's not usually the case with nuclear families. It can be. The Revolution doesn't want an Anastasia around to cause trouble. Why shouldn't the proper reading of the statute and the proper way to align ourselves with our sister circuits be to say that a nuclear family can be a social group for but only if the persecution is nationwide? Well, I think, Judge Kleinfeld, that there's almost an inherent contradiction between positing that a nuclear family, which by definition almost is a small group, that it be the recipient of kind of nationwide derision. I just gave you a hypothetical case where precisely that occurs. Well, but I don't think that's the standard. Well, it is the standard in the Eleventh Circuit for sure. And several of the others have suggested that that is the standard there as well. Well, Your Honor, I would say that I'm unaware of any case that has drawn a bright line that it's certainly not in this nationwide scorn before a family. And there are numerous cases. For example, Meza Menei v. INS in this circuit, the wife of a policeman under an imputed political opinion, the persecutors viewed, imputed her husband's political opinion to her. Now, this was not a nationwide group that was opposing the family. It was a small group. This case, the case involving the Shining Path guerrillas is another one that comes to mind, PACAR. The Shining Path guerrillas were certainly not a nationwide group in Peru, far from it. So I guess my point is that... I recall some of those Shining Path cases where the people could not just relocate to Lima or something and avoid them. Right. Well, and the issue of relocation, of course, is another one that the government argued. We should have somehow made a showing there, but... It's really two ways of casting the same thing, what I'm asking about. Right. But the relocation question is really kind of bound up with what the panel in this case did, where they agreed to send the case back down to the BIA to determine whether or not the government of South Africa was unable or unwilling to protect the Thomas family. But going back to your original question, I simply can't imagine that you can consistently construe a nuclear family and yet at the same time require there be some kind of at-large societal derision before they're entitled to protection. I don't think that... Why not? What would be the point of giving asylum to a nuclear family that's being persecuted in one town, but all they have to do is move to another town in their own country? Well, we don't know that the family could successfully relocate to another town. Well, isn't that another issue that upon remand the IGA would have to look at when considering the... After you reach the persecution, the presumption, and then the well-founded fear aspect of it. That's what the government would have to prove, that she and her family could safely relocate among other things before they would be granted asylum. But I have a different question. I'm wondering if you are arguing for a per se rule that a family is always a particular social group. Because when I look at Estrada, it seems to be saying a per se rule of a persecution of a family per se does not constitute persecution of a social group. But what I think, if you read all the other cases in the other circuits, and even the BIA cases, the two cases that they have, they find some circumstance about a particular family that perhaps ordinarily a family isn't a particular social group, but this takes it out of the ordinary into a particular social group for those purposes. And I think the hypothetical that Judge Kleinfeld is raising is one such circumstance that I can conceive of others. In fact, there have been. I've never maintained that there's a per se rule. We've always viewed it as a case-by-case analysis. You can't simply set down a bright-line test as to the size of the family or the circumstances under which, you know, how many people have to be after them. It's simply the court has to look at, number one, do they satisfy the elements? Because after all, when you look at all the cases that have discussed this issue, the family is held up as a prototypical example of a social group. Why? Because there are certain specific elements that cohere. They're consistent with the Acosta decision, the immutable characteristics. And they use that as a benchmark, a yardstick, to judge the other asylum claims that come before, whether this group matches up as a family. So, no, you can't have a bright-line per se rule. And we've never maintained the contrary. It looks like I have reached my time, and with the Court's permission, I would like to yield to Mr. Horwitz to continue. Thank you, Your Honors. Madam Chief Judge, may it please the Court. If the Court determines that a family can be a particular social group, then the next question which the Court must decide and address is whether the family is a particular social group. The answer, with respect, is a resounding yes, based on this circuit's precedent, the Acosta decision, and the administrative record. The overwhelming evidence establishes that petitions were persecuted by black individuals precisely because of their family relationship to the sadistic Ron Thomas. Mr. Horwitz. May I ask, is Boss Ronnie still in his position as head of that company? It's my understanding that he's retired, Your Honor. And he retired before the application for asylum in this case was filed, did he not? I cannot give you an affirmative yes or no answer on that. But he certainly has retired since. Mr. Horwitz, as a matter of fact, Boss Ronnie retired in 1998. The first incident that affected his family was in 1996. They'd lived in Durban from 1991. There had been no incidents, although Boss Ronnie had been the head of Stronghold Construction since 1986. The record allows the inference that the actions against Mrs. Thomas started when Boss Ronnie took action against his workers. That's correct, Your Honor. There was no persecution for the first six years or five years of their life in Durban. And Boss Ronnie now is retired. Is it not admissible for the IJ, if you were to consider it, that the fact that Boss Ronnie had now retired makes for a changed circumstance in what becomes the presumption of persecution? With respect, I disagree, Your Honor. We have no idea as to the acrimony that remains with respect to these workers and the effects of their mistreatment by Boss Ronnie. It's purely speculative. And to suggest that because he's no longer with that particular organization, the basis for the persecution has disappeared. There's no evidence to suggest that. But the evidence suggests that the fact that he was with the organization and in that position did not lead to persecution from 1991 to 1996 until he started having confrontations with the black workers. That's right. And when he started having confrontations, then there was persecution of the daughter-in-law. But now he's no longer with the company. Does that not allow the immigration judge to infer from that circumstantial evidence that there will not be any persecution should the Thomas Manley return to Durban? Your Honor, without evidence to suggest to the country, and I mean substantial evidence, I think it's a great leap to make. And to put these people at risk because of a mere inference would be contrary to the asylum. Would the poor man on the government approve of that change of circumstances or not? They would, Your Honor. And with respect to the changed circumstances, let me also just deal with the fact that the government had the opportunity to raise the issue of changed circumstances. When the court determined that there was persecution, the government did not, as it was required, rebut that presumption. And as far as petitions are concerned, the government has waived that claim. What evidence is there that the government is unable or unwilling, I mean the government of South Africa, is unable or unwilling to investigate and control what looks like routine crime? Your Honor, I'm pleased you raised that question. The administrative record is replete with background material demonstrating the lack of police control, the lack of authority in South Africa. There is chaos according to that background material. In fact, the governments of South Africa have stopped issuing crime statistics for political reasons. So is it your contention that every victim of crime in South Africa is entitled to asylum here? No, absolutely not. But there must be a nexus between the commission of the crime or the perpetration of the acts and the relationship between those acts and the asylees. Is this an issue that's properly before us? Do we go past finding that there's persecution on account of a social group? And don't we then have to remand to answer the other issues that you've just been asked about, whether the government can control, whether there have been changed conditions? Are those issues decided in the IJ opinion? Your Honor, with respect to the panel decision, the very issue in terms of whether the government was unable or unwilling to control these incidents from occurring, those issues were specifically remanded back to the immigration judge. Well, that's why I wondered why we were discussing them here. Your Honor, I was merely responding to a question from one of your... Well, I don't know why we would reach out for a novel issue, which is whether a nuclear family of four people can constitute a particular social group if there is no basis to find that, assuming they are a particular social group, there is no persecution. Well, Your Honor, with respect, the record is manifestly clear about the existence of persecution. The record is clear that there were five incidents. The dog incident appears, for all that appears in the record, is random. The car vandalizing incident, for all that appears in the record, is random. The police responded in both instances, just got nowhere because they couldn't track any leads. The remaining three incidents arguably are linked. Correct. And linked to, through the, at least, overalls in two of them. And the record does not compel a conclusion, does it, that the authorities were unwilling to pursue those incidents because it is equivocal on the record whether Thomas even wanted them involved. If I may address your questions, Your Honor. With respect to the initial incidents that you raised, Ms. Thomas specifically and directly testified that those incidents occurred either before, occurred upon certain acts taking place between Boss Ronnie and his workers and subsequent to those acts taking place. That was her frame of reference with respect to those, quote, isolated incidents. She connected the dots with respect to those issues. And the police responded to the first two. The police responded, correct. And the record is equivocal with respect to whether she even wanted the police involved with respect to the latter incidents. Well, Your Honor, if I may address that as well. Her testimony, if my memory serves me correctly, specifically dealt with a situation where she was reluctant to call the police and, in fact, on certain occasions did call the police and nothing transpired. She made specific reports to the police. And according to Ms. Thomas, those were never followed through. Let me focus in the question. What evidence in the record compels the conclusion that the authorities failed to respond or offer protection on account of Boss Ronnie? Other than the testimony of the petitioner, Ms. Thomas, where she testified. Where is there anything in the record that connects the failure to protect with knowledge on the part of the police, an animus on the part of the police, not to do so because these folks were retaliating against Boss Ronnie? There's nothing to suggest any form of animus, Your Honor. Is there any sort of requirement? Does it matter whether the government's inability to control persecutors depends on hostility or just incompetence? Specifically in terms of incompetence or inadequate resources or whatever the reason may be. The fact that the petitioner's position is that the government was unable. The petitioners are not submitting or suggesting that the government were active participants in the prosecution of this persecution. So if two families who are neighbors, let's say, get into a feud and we've got the Hatfields and the McCoys going on in Durban. Correct. And the police just say, Hatfields and the McCoys. Then one of them comes here and there is social refugee status, in your view. Correct. Yes? There is social refugee status provided you have compliance and you meet all the other requirements. Well, I just asked you on what I just said. The Hatfields and the McCoys are in a feud and the police just kind of, you know, it's a personal feud. I mean, it's a feud. Is that enough in and of itself for refugee status in this country? In and of itself, I would suggest no, Your Honor. Okay, then what more is required that exists in this case? It's our position that in order for persecution to evolve in that context, the acts perpetrated upon the Thomases must not be isolated and they must not be unrelated to the acts perpetrated against them. They represented a series of escalating events, very traumatic events to petitioner. I suppose the closer analogy would be if the Hatfields were members of the ANC and the McCoys were related to the former apartheid government. Your Honor, if that was the case, we would not be here today. Definitely. You don't have to depend upon a social group in that event. I would think not. You're arguing for sort of a mixed test where, as Judge Reimer says, if it's just a personal feud, even if the government's unable to control it or unwilling to, it really wouldn't be the type of thing for asylum. Correct. But if the reason they're being persecuted has some relationship to the type of issue that's covered by the five prongs, but the reason they're being persecuted is membership in a family, don't you really need a sort of combined element? I know we have a problem trying to put everything in a nice, neat little box, which is not unusual, but this box of family membership seems to require some motive for the persecution beyond the ordinary simple membership. We've suggested that particular motive, Your Honor, and that motive was Boss Ronnie's racism upon his workers. What you're saying distinguishes this from the Hatfields and the McCoys, that the motive for persecuting the members of the family has some political aspect to it. I cannot agree with you more, Your Honor, on that issue. Counsel, you may want to say something about the exhaustion issue. I gather the government may argue that this issue was not properly raised in front of the IJA. Yes, Your Honor. I'll do it briefly because you have only about five minutes left. Certainly. Your Honor, with respect to the issue of exhaustion, it is the petitioner's position that she exhausted all remedies before coming to this court to seek further relief. The issue of social group was fully discussed and she testified fully to those particular issues in her testimony. When it came to the BIA, Ms. Thomas filed a notice of appeal in pro per, and what she did was she attached her declaration, which she had submitted in support of her request for asylum, where she laid out the entire basis of her request for asylum. The immigration judge, having that declaration and hearing her testimony, the BIA had the opportunity to address the issues because she had fully put those issues before the court. Well, the BIA's brief, which was counseled, says in its lead sentence, the record established that the Respondent suffered from past persecution on account of their race. And nowhere in the counseled brief to the BIA do I see any reference to a ground of a particular social group or any argument. That's correct, Your Honor. That's correct. That's correct. But it was addressed, but it was... Why isn't that sort of the end of it? Because it was fully laid out in her notice of appeal. Well, yes, but I'm looking at the argument that was made to the BIA, and you agree with me that there's no reliance at all on a particular social group. So why isn't that just an unexhausted issue? Because the cases determine otherwise, Your Honor, on that particular issue. All right. You have only about, you have about three minutes left if you total, if you want to reserve any time for that. I'd like to reserve, Your Honor. Thank you. I please the Court, Daniel Mayer, on behalf of the Attorney General. The petitioner's claim that a family, a nuclear family constitutes a particular social group was never argued to the BIA, and this Court does not have jurisdiction over this claim. As Petitioners have just conceded in their brief to the BIA... What do we do with the fact that she checked the box? Your Honor, she checked the box, which is the first form before the hearing, before the immigration judge. She put the I.J. on notice, didn't she, when she checked the box that her family membership was in, or social group issue was in play? Judge Price, let me concede the purposes of this argument. Let's assume, although we don't believe it, but let's assume that she presented the issue before the I.J. In order to exhaust all remedies available to her as of right, it's well settled, and it's quite recently reaffirmed in Zara v. Askoff, she has to appeal the issue to the BIA. It doesn't matter if you raise it to the I.J. That's not enough. Her brief to the BIA does not use the word social group once, not even once. What it does, it has an evidentiary submission attached to the notice of appeal, and the counsel, on the basis of the factual record including that declaration, said that she was persecuted on account of race. Race was the only ground presented to the BIA. Didn't the I.J. deal with the contention of family persecution? No. Actually, the I.J. understood the claim the same way as the race claim, and the original panel opinion in this case criticized the I.J. for that. But the board did not – the issue that was raised to the board was on account of race. And the board is no more under an obligation to scour the factual record to discern whether there was a better legal argument that should have been made but wasn't made to it than is this Court when it reviews district court decisions. Did the government raise failure to exhaust in its brief? No, we didn't, and we should have, Your Honor. We did – we pointed out that the claim had never been made below. We did not have an argument that said, therefore, there's a failure to exhaust. We don't – it's a subject matter jurisdiction issue. It's not waivable by us. We didn't waive it by failing to raise it. We should have raised it. The decision by Judge Reinhart and Tocatli addressed a non-jurisdictional waiver argument and expressly distinguished the situation that would apply under 1252d. So we believe this issue was not exhausted below. But in any event, even if we were wrong on that, we think that the correct remedy should be a remand to the board with instructions that it addressed rather than for this Court to try to grapple with a complicated question of whether – of the precise definition of social group. So we think, number one, the correct course here is dismissal. It wasn't raised below at all. It's not all that complicated a question. We have at least four or five decisions saying family is a social group. And the board said it almost 20 years ago. With respect, Your Honor, the board said – well, first of all, with respect to this Court's precedence. Every case that the Petitioner cite is either dictum or involved a situation where a family was targeted because of the religious or political opinions of one of its members. And that – and I want to be very clear, but we believe that that's a very different situation because it's dealt with today and most appropriately dealt with under the doctrine of imputed political opinion, where you have a family that is targeted because of the political opinions of one of its members. We agree that you could use the family nexus between the members to impute political opinions to all of its members and to protect them on that ground. It's important to realize how we got here. Deborah Michael, which is a First Circuit case, which is the first case that grants relief based on a family claim, arose in 1993, three years before the board in matter of SP, which is 21 INN Decision 486, first accepted the doctrine of imputed political opinion. Well, we can – we have a doctrine of political opinion. We also have, as we said, in 2004. Like our system, we recognize that a family is a social group. Perhaps a prototypical example of a particular social group would consist of the immediate members of a certain family. And then we've had all kinds of cases. So it's not all that complicated or novel a question. Your Honor, every – is 2004 referring to Lynn, Your Honor? Yes. Okay. Lynn is a case exactly that involves a situation where you have a family that's persecuted because of what is deemed as a matter of law political opinion, which is the forced sterilization or abortion in China is deemed a political opinion case as a matter of law. And the – what all the Court held there was that there was a sufficient issue, but it should have been raised before the BIA, and therefore there was ineffective assistance of counsel. But we set forth the cases in which we have – we and other circuits have said that a family is a social group. Every one of those cases, Sanchez-Trujillo didn't involve family. It was pure dictum. That's the first case. Every one of the cases that's cited in there is either dictum because the Court – the claim was actually rejected because it was a finding – an affirmance of the conclusion that there was no persecution at all, so it was dictum. Or what you're doing is you're citing cases like Gebermichael, which is a case I was trying to address, Your Honor, in which the claim was accepted in a situation pre-acceptance by the BIA of the doctrine of imputed political opinion. And so I'd like to – because we're sitting in back, it doesn't actually matter what our previous panel opinion says, so I'd like to sort of take you a step back to sort of first principles. And I want to give you a hypothetical and get your take on it. Let's assume that a government of a country – so we're leaving out the issue of private parties – decides to persecute everyone named O'Reilly. And there's nothing racial about it and there's nothing about political opinion. They just say, you know, we are going to round these folks up and beat them and imprison them for no particular reason, just because we want to. And some of the O'Reillys manage to escape and they come here. And they seek asylum. And they say, we've been persecuted by our government on account of our membership in this social group, which is our family. Do they get asylum or not? And if not, why not? Your Honor, I think under existing board precedent they would not get asylum. I don't think everyone with the same last name would constitute a social group under the test. And under the board precedent in deciding whether a group of individuals constitutes a social group, you're supposed to ignore the fact that they're being persecuted. That's a separate requirement. You have to show persecution. Well, it is. I was trying to take that out of the mix to make a more pure example for you, where you don't have the out if they weren't persecuted or you don't have the out that it wasn't the government. All you have are their kinship ties, their family membership. That's it. Well, I don't believe, first of all, that everyone with the same last name in a particular society is a social group. You're arguing with my hypothetical. I'm going to change it to say they're all blood relatives and they all have this name. And everybody in the government knows that they're blood relatives in addition to having the same name. But they don't necessarily have a political opinion or one of the other listed characteristics that are protected to which this could be a parasitic claim. And then the issue for the board would be, Your Honor, whether that's very close to the matter of H case, which was recognition of a sub-clan, which consisted of many individuals in the country, about approximately 1 percent. Would they say that everyone with this very large O'Reilly clan really fits within the approach of matter of H? And that's an issue for the board to grapple with. Family, if I understand your answer, it is family is a particular social group if it's big enough that a little family isn't a particular social group. Is that your position? No, Your Honor. No, I'm not saying that. What the board in matter of H said was that where you had a large kinship group that had a particular dialect that it spoke and it was linked with the former dictator in the country after the overthrow of his regime was a target for retribution, when you had all those factors present, it said we'll recognize it as a particular social group. What are you doing with Acosta? Well, I'm saying it's a matter for the board. And so you're putting me, Your Honor, I'm not trying to duck your question. All I can do is look at what the board has decided. Well, I'm asking you to look at what the board decided in Acosta, where it talked about the identification of an immutable characteristic that is shared by a number of people, and kinship ties is one of the examples that is given. Why doesn't that answer the question? Oh, it doesn't. It does not answer that question, Your Honor, because what the board said in Acosta was that there are, that in order for it to be a particular social group, they must share an immutable characteristic. So that's a necessary condition. But that whether a particular immutable characteristic would be sufficient would be a matter to be decided on a case-by-case basis. And, in fact, the board subsequently in at least two cases listed a number of such past experiences. And with respect, subsequently, the board twice took immutable characteristics, groups that shared immutable characteristics, and said, nope, these aren't social groups, and both times they were affirmed, once by this Court in Sanchez Trujillo, where it said young males in El Salvador and both youth and gender are immutable characteristics. Those don't qualify. This Court affirmed. And very recently, in a case involving the other immutable characteristic, past experiences, there was a claim brought by Haitians who had acquired criminal records in the United States, and they said that they were likely to be tortured if they went back to Haiti because of the fact that they'd acquired a criminal record. The board said that's an immutable characteristic. But what's lacking, perhaps one could say, is although they share an immutable characteristic, they don't share any social relationship with one another. And in the case of a blood relationship, a kinship, a family, both things are present. That is, there's an immutable characteristic, and there's also a relationship inter se. There's a relationship among the individuals who have that characteristic, which is what was lacking, perhaps, in those other cases. And the problem you get to, Judge Graver, if you look and say that that's enough, we're going to say that's a particular social group, is what you then sweep into are many victims of ordinary crime. If you have, for example, relatives of a drug dealer who are targeted and threatened and shot by a rival street gang in retribution for the killing of one of its members, under the approach of the panel majority opinion in this case, I believe those folks would be entitled to a criminal record. Only if it's the government's doing, or indirectly the government's. That takes you into the... No, Your Honor. Actually, the law is, and I agree with Judge Reinhart, it says unable or unwilling is the test, and it includes unable. This Court has never said that under this Court's laws, and the BIA has agreed with this, that if the government is unable to protect them. So if you posit a situation of a weak national police force and you have rival drug gangs and the government's unable to protect them, under the majority opinion in this case, they're eligible for asylum. Or you could ask about a family member of a mafia member who's threatened because a mafia member is cooperating with the police. And so what you get is if you say family is enough, that's what you get in the situation. And the way the courts now deal with this, and I think the better way to deal with family, if you look at the cases out there in which families have been accepted as a social group and relief has been, it's always been a situation where members of the family were targeted because one of their members had a political or religious opinion. And were you making essentially a Chevron argument that the INS through the BIA has already made an interpretation of social group and it's an interpretation to which this Court must defer? Your Honor. And if so, what is the case we need to look at? Well, the Board has laid out a number of criteria, and I think you would defer to those. It hasn't ever spoken to the precise question that's issued here, and that's one of the reasons I think that the Court should remand to let it do so if it doesn't dismiss for lack of exhaustion. But what it did say is that in a cost in addition to immutability, what it said is that the term social group must be construed such that the characteristics that unite the social group make membership in that group comparable to the other four statutory grounds, which are, of course, race, religion, nationality, political opinion. And it said later in Sanchez Trujillo that the characteristics also must be such that they would, by their nature, subject you to a greater risk of persecution of the kinds that governments engage in, although, of course, private individuals can engage in them as well. And if you look at those broad criteria, we don't believe family qualifies under that approach, family in itself. Family in itself is not a nuclear family. It's not the type of characteristic in and of itself on which governments tend to persecute people. You don't have a situation where members of one rival nuclear family generally attack members of other rival nuclear families or where you have orphans, people who are not members of a nuclear family hostile to people who are members of a nuclear family. Okay, so that somewhere it's hard to articulate, but somewhere there has to be some kind of, in the family, there has to be some kind of motivation based on a political or one of these protected grounds that not just the family membership. But here the family member is said to be racist. Right. Now, if it were flipped and the family member were said in a different context to be with Nelson Mandela, you would say, okay, that's good enough. If they're going after the family of Nelson Mandela, then that should be good enough, I would say. Wouldn't you? What's the difference here? Okay, Chief Judge Schroeder, I would say that that's enough. But the reason it's enough is not because I would say the family of Nelson Mandela is a particular social group. I think the way the court should address that situation is through imputed political opinion. On the imputed political opinion, it may well be that in many of the family group cases they are imputed a political opinion. But why do you impute racism to members of a family? If you want to persecute people because the father of the family is a racist, you're persecuting them because they're family members. Now, you don't really they don't they may not be racist and you don't care whether they're racist when you're prosecuting them. So imputed political opinion is an artificial term. If you're doing it solely because they're family members, not because you think they share the same political view. Judge Reinhardt, even if they were, even if you assume that the record showed that they all share this racist viewpoint. I'm saying when they don't share it, it's why would you say imputed political opinion? Well, actually. Why not just say the simple member of a family? That's the reason. Well, Your Honor, I of course don't say that this case is imputed political opinion. If you've got a if you're a victim of racism and you act in retribution against the perpetrator, that does not make your actions on account of race any more than when the Jews rose up in the Warsaw ghetto. They were acting on account of the fact that the Nazis were gentile. I'm not saying that I'm saying. But if you the retaliation is because of the political opinion of the head of the family. If there was evidence to show that, Your Honor, this would be a different case. And there was no evidence whatsoever. I do not believe it is the case that every person who is a racist has a political opinion that's behind that. Counsel, I'm missing a connection in your argument. I can see the part where you say you have to distinguish ordinary street crime that the government can't control from the kind of persecution for which asylum is afforded. That makes perfect sense to me. And I can see where you say that if you just take a nuclear family, that's the object of more one criminal incident after another, that you have to analogize that to ordinary crime rather than persecution. But I can't see the next step where you say persecution of a social group can't count unless it's connected with one of the other things listed in the statute, such as political opinion. It seems to me that the statute has these several categories. And it says on account of race, religion, nationality, membership in a particular social group, or political opinion. What the board has done is not what you've done. It said read membership in a particular social group pursuant to the principle of a justem generis. But what you've done is say membership in a social group, unlike these other things, can't count without one of these other things too. It has to be a combination of membership plus political opinion. And I don't understand the textual basis for what you're saying. Okay, then let me clarify that, Judge Kleinfeld. I certainly didn't intend to say that. What the board said in Acosta is, under justem generis, that the characteristics that you would unite the social group must be similar, must be comparable to the type of characteristics that are embedded in the other four grounds, nationality, etc. When it comes to family, it is our position that family is not that type of characteristic. But I'm not saying that there are no other types of characteristics that are sufficiently similar to that. And the board has found some. It has found, for example, that homosexuals in certain countries. I can't see why family would never be. It seems to me it's more of a hardly ever. For example, Judge Graber's hypothetical about the O'Reillys is kind of similar structurally, I think, to mine, that's not hypothetical, actually, about the family of Haile Selassie. It's nationwide persecution of all members of a political family. Now, my friend, when the CIA evacuated her, was a little girl. She probably didn't have any political opinions yet. She doesn't have to. She had. It was just that she was a Selassie. And it doesn't have to. If the government targets a family in retribution, you know, you want to stamp out a particular political opinion. You want to stamp out dissidents. They didn't want to stamp out an opinion. They wanted to stamp out the Selassies. Well, it's retribution for it. You're selling scores. You're basically... They just wanted to kill the Selassies. This is a primitive country, and the Selassies had ruled for a long time, and now the Marxists wanted to kill them all. And, Your Honor, I mean, I guess you're going to keep refining your hypothetical. I think that that is really a form of... You've got to accept the hypotheticals to address what's on our minds. I understand. And I think that that's an imputed political opinion case. But certainly the Board would be free. I don't want to say that the Board would be unfree in that situation to say this is like... So you think that these machete wielders were thinking, oh, I bet that 11-year-old girl has an opinion about monarchism and Marxism that I disagree with. No. What they're saying is, I hated her family member who used to oppress us, and I'm sampling scores. Would Vos Ronnie be eligible for asylum? No. I do not see any way in which Vos Ronnie would be eligible. He's a victim of... If he came here and said, I'm a racist, I supported the prior apartheid regime. When I ran my business, I mistreated blacks. And now that the apartheid is out, I'm being persecuted by groups of armed and unarmed blacks that the government cannot or will not control. He couldn't do that? On the facts of this case where he's saying, I've got four... Find the hypothetical again. On the hypothetical opinion, if what all he's showing is that he was a racist and now people are seeking retribution against that, that would not be... His political opinion was he supported apartheid. He's very disappointed that it ended. If you could show... If the facts showed that the persecutors were motivated by a political opinion they believed he had or were imputing to him, that would be a different case. And that's not this case and the panel did not... You couldn't impute that to his family? Well, if they believed he had a political opinion, then on particular cases you could sometimes impute political opinions to families. But there was no evidence below whatsoever to show any of this. Racism isn't a political opinion? No, I don't think so. Not in itself. I think you... And it would be very strange to... Why isn't a particular view of a social issue which results in persecution a political opinion? If you believe in apartheid, you say that's a political opinion. But if you believe in practicing racism, that's not a political opinion? What's the difference? Your Honor, what it would mean in that situation is you basically have everyone, all the whites in South Africa, then say we get asylum because we were, you know, believers in and supporters of apartheid. If they're persecuted for that? Well, if they were persecuted by someone, you could say I'm motivated. I'm not seeking retaliation for the way I was treated at work. But I'm retaliating against your political opinion. But there was no political opinion claim made below, Your Honor. And I do think, I just want to also say another thing, Judge Reinhart, which is that the rationale you're describing would do a lot less damage to the government interest than the way the panel majority reasoned it, which was essentially to say nuclear family in and of itself, no plus factors, they get asylum. And so what you get in that situation, you really would have at that point no statutory basis for saying in my hypothetical... What do you mean by plus factors? I noticed that you're making a slightly different argument than what was in the brief, because maybe you're making the same argument, but it seemed to me in reading the PFR, I guess your colleague must have written it, that the government was not making an argument that a family unit can never be a particular social group, but rather it was making an argument. At one point you say a decision to consider a family unit without more had sensitive policy implications, and you mentioned, too, that there's no showing of a broad nationwide threat, and this was isolated episodes of private crime. So I interpreted this that you were arguing consistently with the prior BIA cases that you were not arguing for a per se role, that in fact you were saying that a family could be a particular social group, but you'd have to show, you say without more, that they're being persecuted as a family because of some characteristic that a member of the family has. It's beyond just petty crime or... Right. Is that what you're arguing? I'm not clear now. Okay, Your Honor. What I think we argue in our brief, in our en banc brief, and what I'm saying here are the same thing, which is that family without more under current BIA precedent, nuclear family without more wouldn't be a particular social group, but that there could be other factors in which the BIA could look at and say that, you know, family plus the fact that they're associated because of their relationship with a prior dictator, something like that, we would recognize that that group would be a particular social group, but that certainly the board itself has never said, and in matter of age what it did is it said it wasn't just kinship, it was kinship of a clan that had been associated with a prior leader and it was after the overthrow of that leader was victimized by his opponents. And so it was not simply nuclear family because if you just had nuclear family and you said that's enough, then you really have no statutory basis to say that the family of a drug dealer, the family of a mafioso, that they don't come in because you would be saying, well, they're persecuted on account of, it's a but-for cause. That was the panel majority's rationale. So long as it's a but-for cause, your family relationship is a but-for cause of the fact you were harmed and the government can't protect you, that's it. But why would you limit it? Why would you limit it if social group, if a family can be a social group, why would you limit the plus to the other four grounds since they already have one ground? I mean, what is the plus that has to be there? Your Honor, I want to be careful because I'm not. I'm using your words. I understand that. And I'm trying my best to answer a case in which the Board itself hasn't been given an opportunity to articulate what test it wants to do. And it really is its role and not my role to do that. I think what I would ask is that this Court would say this isn't it. What more might be in another case? That's not before us. The Board has to grapple with that. And, of course, there's judicial review of its determination. I would, you know, I'm trying to answer the questions. But I would rather, and I think the appropriate course, given the division of authorities between this Court and the Board, not for this Court to attempt to create what the test would be, what all the plus factors would be. My feeling is that I.J. had all this in front of him. He had the box checked. The BIA had all this in front of him. And the BIA, and it's frustrating to us, issues another streamlined decision. So they've had their chance to say something. Why should we send it back to them now? Judge, with respect, Judge Wardle, I don't think they did because the brief that they were presented with made only one claim, and the claim was on account of race. And when the Board makes a determination whether to streamline under the regulations, it's similar to, I think, the way this Court might decide whether to publish an opinion. They look to see whether it's a novel question of law, you know, whether it's settled by existing precedent, how difficult it is. It's a bunch of factors they look at. They look at a brief, and the only issue is on account of race, which was an issue that really the original majority panel opinion dealt with in a paragraph. Counsel, let's say that we go with you partway. We say under the kind of deference we're required to exercise under a GIDAE, a GIDAE, I guess that's how you say it, that we have to defer to the way the Board interprets family as a social group. The IJ missed the boat. The box was checked, and the IJ just overlooked it. And even though the petitioners failed to appeal it, nevertheless the INS failed to preserve the issue that they didn't appeal it. And so we're going to give the BIA a chance. Would that all lead to the conclusion that what we do is say, before we decide whether family is a social group or not, we should just remand to the BIA so that they can decide in the first instance, and we can perform the deferential kind of review we're required to under a GIDAE, a GIDAE? Yes. The answer is yes if you concluded that there was no failure of exhaustion, because that's a subject matter jurisdiction non-waivable defect. But if you concluded that there was no failure of exhaustion problem, then I believe the correct course here would be to keep the panel opinion vacant, remand to the board, say it was raised below, and require that it addressed. But we could also determine, could we not, that a four-person family is insufficient based on what we know in the record to constitute the term social group? Our primary request is that you remand, and I think the board should get the opportunity in the first instance. But if not, I believe that this case I think really is the reductio ad absurdum, because they're really just victims of ordinary crime. Well, therefore, why bother remanding? Why not decide it at this level? Well, the remand issue is, I think as a matter of administrative niceties, the board should get the first opportunity if you thought that it was very simple and controlled by their precedent in that direction. The board was told in the brief, she feared that if they were, at the very beginning of the argument, she feared that if they were forced to return to South Africa, they would be killed for certain black South Africans who worked under the supervision of Lee's son and daughter-in-law, held, and then in bold, a grudge against her and her family because of abusive actions perpetrated by him. Right. And that's a description of a factual claim. And the legal hook, the legal box that counsel argued that that fit into was on account of race. Because of the abusive actions perpetrated by him. It says very clearly that the reason is because of the actions perpetrated by him. Isn't that on account of their relationship to him? Isn't that very clear? I don't think so, Your Honor. The first sentence of that paragraph says, the record established that the Respondent suffered from past persecution on account of race. That's also true. And the word social group did not appear even once. Your Honor, I'm not saying that the factual story in the declaration couldn't support a legal argument. You couldn't take those facts and say that's on account of social group. What I'm saying is that wasn't a legal argument that was in fact made. And the Board is not under a duty to go and to look at the facts and say, you know what, you should have argued there's a better doctrinal box for this, and we're going to ---- Because of the box or because of the words used in the brief? I'm sorry. When I meant doctrinal box, I was not referring to the box on the intake. I was referring more generically. They're under no obligation to decide was there a better legal argument that you should have made based on the facts than the ones you did make. All right. Your time has expired. Thank you, Your Honor. Thank you again, Your Honors. Very briefly, I don't think this Court has to reach out and decide esoteric issues that aren't present. The record before the Court, it seems to me, is reasonably clear. And that's really what should be focused on. Now, there's undisputed evidence that Boss Ronnie was a racist. And picking up on what Judge Reinhart said, if that isn't a political opinion, I don't know what is. In this country, if someone attacks someone else because of ---- for racial reasons, for religious reasons, for reasons of sex or sexual orientation, we have a name for that. We call it a hate crime. And that means that we recognize that certain conduct, offensive as it is, is also political. And that really is what the record reflects here. And whether that is something that's imputed to the Thomas family, it seems to me it doesn't matter. Because if they can't catch Boss Ronnie, they're retaliating because he was a racist. That was his political position. My hypothetical would be ---- He's a jerk. Okay? I mean, he's a jerk. And you can be a jerk for a whole lot of reasons. And the question is, if you're a jerk and somebody can't stand the way you behave as an employer, and therefore retaliates, what does that ---- why does that make it into something other than just that? Well, Judge Reimer, I would submit that he's more than just a jerk. He's a racist jerk. If suppose the government ---- He's not a jerk, maybe. He's a jerk. Correct. Now, had the government of South Africa been the perpetrator in this case? In other words, let's say ---- Yes, but it wasn't. No, correct. Private employees who are ticked at their boss and take action that's horrible, inappropriate, whatever, but they take action because they're ticked at their boss. It must happen daily around the world. What makes the object of their irritation a social refugee? Because they are being punished because, I mean, this is the government's position. There has to be something extra, and they're being punished for racial reasons. To follow up on my hypothetical ---- You don't need them to be a social group. I mean, if it's because of a political opinion, that's an easy case, and that wasn't raised, and that's not the point. Well, but to get back to the hypothetical I tried, which is that the government of South Africa, for whatever reason, were persecuting these people because, let's say, Boss Ronnie wasn't available, left the country, and somehow they were taking this action. Is there any doubt that the family would perhaps be looked upon favorably for asylum purposes? I don't think so. But the test is not whether the government is involved. It's whether the government is unable or unwilling to prevent these depredations. And I think there's something beyond just retribution for ---- This is not a drive-by shooting with due respect to Judge Fernandez and his dissenting opinion in this case. You can't compare that. Why not? Well, because a drive-by shooting is a random act. Wait a minute. You're contending you don't need, and the government is contending you do need, one of the other things in the statutory list, such as political opinion. If you don't need one of those other things, such as race or political opinion, and you just look at it in terms of social group, family, why isn't it like a drive-by shooting? You may answer the question and then your time is up. All right. Well, because it doesn't bear the same elements. A drive-by shooting is random. It's a singular episode. Apparently it can be at the particular house of that dealer. Your time has expired. Thank you. I thank Your Honor for your kind attention. Thank you. The case is argued and submitted for decision. This Court stands adjourned. All rise. This Court for discussion stands adjourned.
judges: Schroeder, Reinhardt, O'scannlain, Rymer, Kleinfeld, Hawkins, Silverman, Graber, Wardlaw, Paez, Bea